RAMIREZ, J.
Island Sea-Faris, LTD., d/b/a Antigua Sea-Faris Tour Company, appeals the denial of its motion to dismiss the amended complaint for lack of personal jurisdiction. We reverse because there was neither a statutory basis for exercising jurisdiction over Island Sea-Faris, and there were insufficient contacts between Island Sea-Faris and the State of Florida to satisfy due process.
I. Facts
While in Puerto Rico, appellee Patricia R. Haughey, a resident of Missouri, purchased tickets from Royal Caribbean for a shore excursion in Antigua. After she was injured during the excursion, she sued Royal Caribbean and Island Sea-Faris as the operator of the excursion.
*1077 In an affidavit in support of its motion to dismiss, Island Sea-Faris’ Managing Director testified that basically Island Sea-Faris had no ties to the State of Florida. For years, Royal Caribbean has been offering shore excursions to its customers, some of which are provided by Island Sea-Faris. At the time of Haughey’s shore excursion in July 2004, there was no formal written contract between Royal Caribbean and Island Sea-Faris. Royal Caribbean paid Island Sea-Faris in cash for the excursions purchased by Royal Caribbean’s passengers; at a later time, Royal Caribbean began making wire transfer payments to Island Sea-Faris’ bank account in Antigua. Island Sea-Faris does not advertise its tours in the United States; it has never dealt with or commissioned any agents to work on its behalf in the State of Florida.
In response to the motion, Haughey argued that the court had specific and general jurisdiction over Island Sea-Faris’ activities. Haughey introduced the following evidence in relation to the business association between Royal Caribbean and Island Sea-Faris: Royal Caribbean sold tickets for Island Sea-Faris’ shore excursions, and Royal Caribbean sold tickets via the telephone and the internet to persons in Florida; Royal Caribbean processed the telephone and internet purchases at Royal Caribbean’s substations located in Florida; passengers aboard a Royal Caribbean cruise ship were able to purchase tickets for Island Sea-Faris’ shore excursions while in Florida territorial waters; Royal Caribbean is the only party that can collect the money for the shore excursions, and Royal Caribbean pays Island Sea-Faris for the shore excursions; and Island Sea-Faris provides the actual shore excursion, and pursuant to this business venture, Royal Caribbean receives forty three cents on every dollar and Island Sea-Faris receives the remainder.
Haughey also introduced evidence that Island Sea-Faris worked with other major cruise lines, including Carnival, in Florida, to provide their shore excursions; and that Island Sea-Faris contracted to purchase insurance covering persons, property, or risk in Florida, including Royal Caribbean and Carnival as the named insured parties. Additionally, Haughey introduced evidence to show the existence of a 2003 contract between Royal Caribbean and Island Sea-Faris that required insurance. Haughey also introduced the 2005 Tour Operator Agreement entered into between Island Sea-Faris and Royal Caribbean in October 2005 that contained clauses relative to insurance and indemnification.
II. Legal Discussion
We conclude that the trial court erred when it denied the dismissal of the amended complaint.
A. Substantial Activity Under Section 48.193(2)
Haughey first argues that, pursuant to section 48.193(2), Florida Statutes (2007), Island Sea-Faris was engaged in substantial and not isolated activity within this state. The record does not support any activity by Island Sea-Faris within Florida, let alone substantial activity. Everything Haughey argues that Island Sea-Faris does in this state is, in reality, done by Royal Caribbean and other cruise lines. Haughey tries to ascribe Royal Caribbean’s activities to Island Sea-Faris by alleging that Royal Caribbean was Island Sea-Faris’ broker, relying on section 48.181(3), Florida Statutes (2007). By its terms, however, this statute refers to personal property. Haughey cites to Dinsmore v. Martin Blumenthal Assocs., Inc., 314 So.2d 561, (Fla.1975), a case finding no jurisdiction against the defendant. Furthermore, the Dinsmore case involved litigation on an exchange of stock, which is
*1078 intangible personal property. Id. at 564. Here, Haughey is suing in tort. Royal Caribbean did not sell any personal property. At best, it sold a service — a shore excursion. In American Baseball Cap, Inc. v. Duzinski, ■ 359 So.2d 483 (Fla. 1st DCA 1978), the court stated that:
to invoke subsection (3) for the acquisition of jurisdiction over a nonresident defendant it is necessary that the party attempting to effect service must demonstrate either (1) that the nonresident defendant has some degree of control over the personal property referred to in said subsection (3) of the statute in the hands of the brokers, jobbers, wholesalers or distributors selling or distributing the property in this state, or (2) that the nonresident defendant has some degree of control over the brokers, jobbers, wholesalers or distributors selling or distributing the said personal property in this state.
Id. at 487. Because there was neither personal property nor any control of Royal Caribbean, the plaintiff has not met either prong.[1]
B. Conducting Business Under Section 48.193(l)(a)
Haughey next argues for jurisdiction based on section 48.193(l)(a), Florida Statutes (2007), operating, conducting, engaging in, or carrying on a business or business venture in this state. Merely because the tickets for the shore excursions can be sold in Florida does not equate to Island Sea-Faris doing business in this state when it is undisputed that Island Sea-Faris never directly sold any tickets in Florida. Even if Island Sea-Faris had sold the ticket in Florida (it was sold in Puerto Rico), there is no connexity between the alleged tort and the sale of the ticket.[2] See Camp Illahee Investors, Inc. v. Blackman, 870 So.2d 80, 85 (Fla. 2d DCA 2003) (“By its terms, section 48.193(1) requires connexity between the defendant’s activities and the cause of action.”). Furthermore, as in Camp Illahee, there is nothing in the record to reflect that either an apparent or actual agency relationship existed between Royal Caribbean and Island Sea-Faris. In particular, Haughey made no showing that Island Sea-Faris ever represented that Royal Caribbean was Island Sea-Faris’ agent, or that Island Sea-Faris, as principal, exercised control over Royal Caribbean, as agent. See State v. Am. Tobacco Co., 707 So.2d 851, 854 (Fla. 4th DCA 1998) (stating that control by the principal over the agent is a necessary element of agency); Ilgen v. Henderson Props., Inc., 683 So.2d 513, 514-15 (Fla. 2d DCA 1996) (discussing the elements necessary to establish apparent or actual agency).
Haughey also argues for jurisdiction based on contracts entered between Royal Caribbean and Island Sea-Faris. Because Haughey is neither suing nor can it sue for breach of those contracts, we reject that they can form the basis for exercising jurisdiction over Island Sea-Faris over a tort that occurred in Antigua. Neither can Haughey rely on a written contract entered into in October 2005, between Royal Caribbean and Island Sea-Faris, long after Haughey was injured. Likewise, the forum selection clause contained in the 2005 Agreement, even if applicable, would only confer jurisdiction over an action to *1079 enforce the agreement. Haughey is not suing under the contract.
C. Insurance Contract Under Section 48.193(l)(d)
Haughey also argues that because in the 2005 Agreement Island Sea-Faris undertook to indemnify Royal Caribbean for any losses, claims, liabilities, damages, and causes of action arising out of the shore excursions, that Island Sea-Faris has contracted to insure a person, property or risk located within this state at the time of contracting. We reject this argument because (1) the agreement was entered into after the accident; and (2) the person, property or risk was never located within this state, let alone at the time of contracting.
D. Minimum Contacts
Finding no statutory support for the exercise of jurisdiction over Island Sea-Faris, we need not reach the second prong — whether Island Sea-Faris had sufficient minimum contacts with Florida. See Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989). Even if Island Sea-Faris fell within the wording of a long arm statute, “a plaintiff may not constitutionally apply the statute to obtain jurisdiction in the absence of the requisite minimum contacts with the forum state.” Id. at 502. It follows then that an action that does not fall within the statute cannot satisfy the requisite minimum contacts. The test is whether the defendant’s conduct in connection with the forum state is “such that he should reasonably anticipate being haled into court there.” WorldWide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Given the lack of contacts between Island Sea-Faris and the State of Florida, Island Sea-Faris could not reasonably anticipate being haled into court here.
III. Conclusion
We conclude that Haughey failed to meet both prongs of Venetian Salami in that there was no statutory basis for exercising personal jurisdiction over Island Sea-Faris in connection with the subject accident and, even if there was, given the lack of contacts, it would violate due process to exercise • such jurisdiction. We therefore reverse and remand with directions to dismiss the action against Island Sea-Faris.
Reversed and remanded.

. Haughey argues that the shore excursion constitutes intangible personal property, evidently because there is a ticket involved. Giving customers tickets does not convert a service (the excursion) into personal property.

. Haughey would have a better argument were she suing for breach of the ticket contract.